IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FELIPE MEDINA-MAR,**

    Petitioner,

v.                                                         Civil Action No. 5:16cv142
                                                               (Judge Stamp)

**WARDEN SAAD,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On September 2, 2016, *pro se* Petitioner, Felipe Medina-Mar, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a habeas corpus petition pursuant to 28 U.S.C. § 2241, challenging the manner in which the Bureau of Prisons ("BOP") calculated his federal sentence. ECF No. 1. Petitioner paid his filing fee on September 29, 2016. ECF No. 5. On October 4, 2016, this Court made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against Respondent. ECF No. 6. On October 27, 2016, Respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause with a memorandum in support. ECF Nos. 8 & 9. Because Petitioner was proceeding *pro se*, on October 31, 2016, the court issued a Roseboro Notice. ECF No. 10. A review of the docket indicates that the Roseboro Notice was delivered to FCI Gilmer on November 2, 2016. ECF No. 11. Petitioner did not file a response.

### II. Facts

On August 10, 1999, Petitioner was arrested by local authorities in Alamance County, North Carolina on drug related charges. See Declaration of Deborah Colston, BOP Management

Analyst at the Designation and Sentence Computation Center ("Colston Decl."), ECF No. 9-1, ¶ 9 at 2, and BOP Designation and Sentence Computation Center ("DSCC") Information on State Arrest, ECF No. 9-2 at 2.

On September 22, 1999, Petitioner was borrowed by federal authorities pursuant to a writ of *habeas corpus ad prosequendum.* See Colston Decl., ¶ 10 at 2; see also Writ of Habeas Corpus *Ad Prosequendum*, ECF No. 9-3 at 2; and U.S. Marshals Form 129, ECF No. 9-4.

On July 24, 2000, Petitioner was sentenced to a 328-month term of imprisonment in the United States District Court for the Southern District of Texas, for Conspiracy to Possess with Intent to Distribute More than 1,000 Kilograms of Marijuana and 5 Kilograms of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A); Aid and Abet To Possess with Intent to Distribute 318 Kilograms of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) & 18 U.S.C. § 2; Aid and Abet to Possess with Intent to Distribute 999 Kilograms of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) & 18 U.S.C. § 2; Aid and Abet To Possess with Intent to Distribute 1363 Kilograms of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) & 18 U.S.C. § 2; and Aid and Abet To Possess with Intent to Distribute 1899 Kilograms of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) & 18 U.S.C. § 2. See Colston Decl., ¶ 11 at 2 and Judgment and Commitment, ECF No. 9-5 at 2 - 3.

On August 1, 2000, Petitioner's North Carolina state charges were dismissed because of his federal sentence. See Colston Decl., ¶ 12 at 2 and BOP DSCC Information on State Arrest, ECF No. 9-2 at 2 and N.C. State Dismissal, ECF No. 9-6 at 2.

On February 10, 2015, Petitioner received a federal sentence reduction to 263 months. See Colston Decl., ¶ 13 at 2; see also Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), ECF No. 9-7 at 2 – 3.

Petitioner's federal sentence commenced on the date it was imposed, July 24, 2000, and he received prior custody credit from August 10, 1999, the day he was arrested in Alamance County, North Carolina, through July 23, 2000, the day prior to the imposition of his federal sentence. See Colston Decl., ¶ 14 at 2; see also BOP Public Information Inmate Data, ECF No. 9-8 at 4.

Petitioner's current projected release date, the date on which he will complete serving his reduced federal sentence with consideration for good conduct time, is December 17, 2018. See Colston Decl., ¶ 15 at 2; see also BOP Public Information Inmate Data, ECF No. 9-8 at 4.

### III. Contentions of the Parties

#### A. The Petition

Petitioner maintains that the BOP unlawfully computed his sentence. ECF No. 1 at 5. He contends that he is entitled to 354 days of "jail time credit" because he has been in continuous custody since August 8, 1998 on his federal charges. ECF No. 1-1 at 1. He asserts that because he has already received a sentence reduction, if his "jail time credit" were properly calculated, he would be entitled to immediate release. Id. at 2.

Petitioner contends that he raised his claims as administrative grievances to the BOP but they were denied. ECF No. 1 at 8. He asserts that he has fully exhausted all administrative remedies. ECF No. 1-1 at 2 – 3.

As relief, he seeks to have the BOP directed to award him credit for "the uncalculated time spent in federal custody" from the time of his initial arrest on August 8, 1998 in connection with the federal charges. ECF No. 1 at 8.

#### B. Respondent's Motion to Dismiss/Summary Judgment

Respondent maintains that Petitioner's federal sentence is correctly calculated and the petition should be dismissed or summary judgment granted in its favor because Petitioner's federal sentenced commenced on July 24, 2000, the day he was sentenced, and he is not entitled to any additional prior custody credit. ECF No. 9 at 1 - 3. Respondent further notes that although some of the administrative remedies Petitioner filed regarding his sentence calculation were rejected for procedural reasons, it is not asserting the affirmative defense of failure to exhaust administrative remedies. Id. at 2.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which

would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. Analysis

### A. Prior Custody Credit

Review of this petition must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). In addition, a defendant must be given credit 'for any time [s]he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence.' 18 U.S.C. 3585(b)" King v. DeBoo, 2012 WL 1119763, *2 (N.D. W.Va. Apr. 3, 2012) (Bailey).

6

However, in some cases, a federal sentence may begin prior to the Attorney General gaining physical custody of the defendant. Where, as here, when a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him,...and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty . . .

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting In re Liberatore, 574 F.2d 78 (2nd Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *aff'd,* 100 F.3d 946 (3rd Cir. 1996) *citing* United States v. Warren, 610 F.2d 680, 684-85- (9th Cir. l980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."). The mere fact that a state prisoner is in federal court pursuant to a federal writ of *habeas corpus ad prosequendum* does not mean that the prisoner's federal sentence commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir.

1992)("A prisoner is not even in custody for purposes of section 3568[1] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities.").

The BOP, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). The BOP must follow 18 U.S.C. § 3585(b) when calculating sentences:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

(emphasis added).

In Wilson, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. 329 at 337. Thus, prior custody credit cannot be awarded to a prisoner if the prisoner has already received credit towards another sentence. See United States v. Brown, 977 F.2d 574, 1992 WL 237275, at *1 (4th Cir. Sept. 25, 1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence); United States v. Goulden, 54 F.3d 774, 1995 WL 298086 (4th Cir. May 17, 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

---

[1] In computation of any federal sentence, two separate decisions must be made: when the federal sentence commences and to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. For offenses committed prior to November 1, 1987, each of these decisions is governed by repealed 18 U.S.C. § 3568, which specifies that the Attorney General is responsible for sentence computation decisions. For offenses committed on or after November 1, 1987, commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).

Here, a careful review of the pleadings and exhibits, including records from the Alamance County, North Carolina, establishes that Petitioner is not entitled to any prior custody credit, and his sentence as calculated by the BOP is correct.

Turning first to Petitioner's argument that he is entitled to "354 [sic] days of Jail Time Credit," either beginning on August 8, 1998, the day he was arrested, and continuing until July 24, 2000, the date he was sentenced on his federal charges, or beginning on November 12, 1998, the date he contends he was transported to Texas from North Carolina to face federal charges [see ECF No. 1-1 at 1-2], it is apparent from the record before the undersigned that Petitioner is mistaken not only in his math,[2] but also about the date he was arrested by Alamance County, North Carolina law enforcement. Petitioner was not arrested on August 8, 1998, as he contends, but rather, on August 10, 1999. See BOP DSCC Information on State Arrest, ECF No. 9-2 at 2. Thus, the amount of "jail time credit" at issue is actually from August 10, 1999 to July 23, 2000, the day before his federal sentence commenced, or 348 days.

Nonetheless, when Petitioner was arrested on August 10, 1999 by the North Carolina authorities, because North Carolina had primary jurisdiction, Petitioner remained in the custody of the state of North Carolina until August 1, 2000, when his state charges were dismissed following the July 24, 2000 imposition of his federal sentence. Because his state charges were dismissed, his federal sentence is deemed to have commenced on the date it was imposed, or on July 24, 2000. The time he spent in the custody of the state of North Carolina has already been credited against his federal sentence. See BOP Public Information Inmate Data, ECF No. 9-8 at 4. Because of the general rule that a defendant may not receive double credit for his detention time, Petitioner is not automatically entitled to any additional credit as to his federal sentence.

---

[2] The number of days elapsing between August 8, 1998 and July 23, 2000 is actually 715 days, not 354, and the number of days elapsing between November 12, 1998 and July 23, 2000 is 619 days.

9

Accordingly, because all of the time Petitioner spent detained from August 10, 1999 until his federal sentence commenced on July 24, 2000 has already been credited towards his federal sentence, he has already received all the prior custody credit he is entitled to receive.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 8] be **GRANTED**, and Petitioner's §2241 petition [ECF No. 1] be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 128 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se p*etitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation electronically to all counsel of record.

DATED: June 5, 2017

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE